IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SEGUNDO MARCELO CHACHIPANTA CANDO,<br><br>Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY, TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; IMMIGRATION AND CUSTOMS ENFORCEMENT, DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; and STEVE FANNON, or successor, Warden of McCook Detention Center;<br><br>Respondents. | **8:26CV46**<br><br>**MEMORANDUM AND ORDER** |

    This matter is before the Court on Petitioner Segundo Marcelo Chachipanta Cando's (Chachipanta Cando) Verified Petition for a Writ of Habeas Corpus. (Filing No. 1). Chachipanta Cando, a noncitizen facing removal from the United States, is detained by U.S. Immigrations and Customs Enforcement. He alleges his detention is unlawful because the Respondents have denied him a bond hearing to which he is entitled. For the reasons set forth below, his petition will be granted in part, and the Court will order that Chachipanta Cando be given a bond hearing.

## BACKGROUND

Chachipanta Cando is an Ecuadoran native and citizen. (Filing No. 1 at 8). He entered the United States on September 29, 2020, as a seventeen-year-old. (Filing No. 1 at 8; Filing No. 6 at 3). The next day, U.S. Immigration and Customs Enforcement (ICE) initiated removal proceedings against Chachipanta Cando by serving him with a Notice to Appear charging him with being subject to removal as "as an alien present in the United States without being admitted or paroled[.]" (Filing No. 6-1).

As an unaccompanied minor, Chachipanta Cando was transferred to the care of the U.S. Department and Health and Human Services. (Filing No. 1 at 8); *see* 8 U.S.C. § 1232(b)(3). He was released on November 6, 2020 "pursuant to section 462 of the Homeland security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008." (Filing No. 1 at 8; Filing No. 1-3). After that, Chachipanta Cando lived in Hennepin County, Minnesota, where he and his partner had a child in 2022. (Filing No. 1 at 8). Chachipanta Cando filed an application for asylum around one year later (Filing No. 1 at 9) and received employment authorization through March 2029. (Filing No. 1-5).

On January 3, 2026, ICE arrested Chachipanta Cando during Operation Metro Surge. (Filing No. 6 at 4). He was transferred to the Cass County Jail in Cass County, Nebraska the next day (Filing No. 6 at 4) and was transferred again to the McCook Detention Center several weeks later, where he remains. (Filing No. 6 at 4).

Chachipanta Cando sought release on bond during the pendency of his removal proceedings. The immigration judge denied his request for a custody redetermination, reasoning that the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) "strips this Court of jurisdiction to consider [Chachipanta Cando] for bond in spite of the numerous district court cases finding [noncitizens] like the current one are eligible for a bond." (Filing No. 1-7 at 3).[1] The immigration judge further indicated that if he had jurisdiction, he would

---

[1] The immigration judge also addressed—and rejected—Chachipanta Cando's arguments that he was entitled to bond given his status as an unaccompanied minor under 8 U.S.C. § 1232(c)(2)(B) and as a member of the class in "J.O.P. v. U.S. Dept. of Homeland Security et al., Civil Action[ ]8:19-cv-01944 (D. Md.)[.]" (Filing No. 1-7 at 2).

have granted Chachipanta Cando "a bond of six thousand dollars" because he "is not a danger to the community, and is a moderate flight risk." (Filing No. 1-7 at 3).

Chachipanta Cando responded by filing his petition for a writ of habeas corpus in this Court. (Filing No. 1). He seeks immediate release or, in the alternative, "release upon posting of a $6,000 bond with the Department of Homeland Security, equal to the amount that the [immigration judge] stated he would grant had he believed he had jurisdiction." (Filing No. 1 at 2). The Court directed Chachipanta Cando to serve his petition on the respondents (Filing No. 3) and ordered the respondents to file a return on the petition within three business days of service to show cause why the petition should not be granted. The Federal Respondents[2] did so (Filing No. 4) and Chachipanta Cando replied (Filing No. 7). The parties agreed to waive a hearing on Chachipanta Cando's petition, and the Court deemed the matter submitted on their written arguments.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts may grant writs of habeas corpus. 28 U.S.C. § 2241(a). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Chachipanta Cando bears the burden to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

The Court has previously concluded that noncitizens detained within the interior of the United States who have been present here for years are entitled to a bond hearing. *See Sales Ambrocio v. Noem et al.,* 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025); *Sanchez Lopez v. Jeffreys*, 2025 WL 3533875, at *3 (D. Neb. Dec. 9, 2025); *Angulo Urgiles v. Bondi et al.,* 2026 WL 295403 (D. Neb. Feb. 4, 2026). It reaches the same conclusion here based on its interpretation of the relevant statutory detention framework.

---

[2] The Federal Respondents are all but Steve Fannon, Warden of McCook Detention Center. (Filing No. 4 at 3 n.1). Counsel has not entered an appearance on behalf of Warden Fannon, nor has he responded to the petition.

To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. *Jennings,* 583 U.S. at 285. "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether a noncitizen seeking to enter the country is admissible." *Id.* Under 8 U.S.C. § 1225, a noncitizen who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." *Id.* § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. *Id.* § 1225(a)(3).

Applicants for admission fall into either of two categories, § 1225(b)(1) or § 1225(b)(2). Section 1225(b)(1) applies to an alien "who is arriving in the United States," § 1225(b)(1)(A)(i), or, subject to the discretion of the Attorney General, "has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph," § 1225(b)(1)(A)(iii). Section 1225(b)(2), by contrast, "is broader" and generally "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Noncitizens covered by § 1225(b)(2) are not eligible for bond during the pendency of removal proceedings. *See* § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings]."); *Jennings,* 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

8 U.S.C. § 1226, by contrast, "generally governs the process of arresting and detaining" noncitizens found within the United States "pending their removal." *Jennings,* 583 U.S. at 288. Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)). And except as provided in § 1226(c),[3] the Attorney General "may

---

[3] Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities.

release" a noncitizen detained under § 1226(a) "on . . . bond" or "conditional parole." *Id.* Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention. See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

In sum, "U.S. immigration law authorizes the Government to detain certain *aliens seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings,* 583 U.S. at 289 (emphasis added). The issue here is which provision applies to Chachipanta Cando. He says § 1226(a)[4] and asserts he is therefore entitled to a bond hearing. The Federal Respondents say § 1225(b)(2) and assert he is not entitled to a bond hearing.

To resolve that dispute, the Court "begin[s] with the text" of the statutes. *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806 (8th Cir. 2021). But "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Id.* (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)). The Court must also consider the statutory context in which the words in question appear, including both "the specific context in which th[e] language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)).

Applying those principles here, the Court concludes that Chachipanta Cando is detained under § 1226(a). The Supreme Court has characterized § 1225 and § 1226 as establishing two tracks—one that applies to noncitizens "seeking admission into the country" and one that applies

---

§ 1226(c)(1). The Attorney General may release noncitizens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). There is no suggestion here that Chachipanta Cando is subject to detention under § 1226(c). (Filing No. 1 at 9).

[4] Chachipanta Cando also argues that § 1225(b)(2) "could not have applied to" him because he arrived in the United States "as an unaccompanied alien child." (Filing No. 7 at 27). And he argues that under § 1232(c)(2)(A), he had to "'be promptly placed in the least restrictive setting,' which could not be 'a secure facility' unless he 'pose[d] a danger to self or others or ha[d] been charged with having committed a criminal offense.'" (Filing No. 7 at 27). The Court need not reach that argument because it finds that he is not subject to mandatory detention under § 1225(b)(2) on different grounds.

to noncitizens "already in the country." *Jennings,* 583 U.S. at 289. Chachipanta Cando falls within the latter track. *Cf. Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("The distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Chachipanta Cando is, without doubt, an "applicant for admission" as that term is defined in § 1225(a)(1). But because he entered the United States over five years ago, the Court cannot say that he was also "seeking admission" when he was detained by ICE in January 2026. There must be a distinction between the two terms. *See Alvarez Ortiz v. Freden,* 2025 WL 3085032, at \*7 (W.D.N.Y. Nov. 4, 2025) ("As numerous courts have observed, if all 'applicant[s] for admission' also are 'seeking admission,' then the words 'seeking admission' would be surplusage.") (collecting cases). "Seeking admission" has no statutory definition, so it takes its plain meaning. *Padilla v. Galovich et al.,* 2025 WL 3251446, at \*4 (W.D. Wis. Nov. 21, 2025). By that plain meaning, "seeking" implies action, and noncitizens like Chachipanta Cando "who have been present in the country for years are not actively 'seeking admission.'" *Beltran Barrera v. Tindall,* 2025 WL 2690565, at \*4 (W.D. Ky. Sept. 19, 2025); *Belsai D.S. v. Bondi,* 2025 WL 2802947, at \*6 (D. Minn. Oct. 1, 2025) ("One who is 'seeking admission' is presently attempting to gain admission into the United States."); *Lopez-Campos v. Raycraft,* 2025 WL 2496379, at \*6 (E.D. Mich. Aug. 29, 2025) ("'[S]eeking admission' . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

Additionally, Chachipanta Cando's arrest warrant was, by its own terms, issued "pursuant to *sections 236* [8 U.S.C. § 1226] and 287 of the Immigration and Nationality Act." (Filing No. 6-2 at 1) (emphasis added); *see also Gomes v. Hyde,* 2025 WL 1869299, at \*6 (D. Mass. July 7, 2025) (detailing "Congress's intent to establish a discretionary, rather than mandatory, detention framework for *noncitizens arrested on a warrant*") (emphasis added). Nor does it appear that an immigration officer determined that Chachipanta Cando was "not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). It is also notable that Chachipanta Cando's Notice to Appear did not designate him as an "arriving alien," which is "the language used to define the scope of § 1225(b)(2)(A) in the implementing regulations." *Ochoa Ochoa v. Noem,* 2025 WL 2938779, at \*6 (N.D. Ill. Oct. 16, 2025); *see* 8 C.F.R. § 235.3(c)(1). Documents issued by ICE to Chachipanta Cando, then, further support the conclusion that he is detained under § 1226(a).

Summed up, § 1225(b)(2) only applies in the case of a noncitizen who is an "applicant for admission" and is *also* "seeking admission." Having lived in the United States for years before being detained, Chachipanta Cando was not "seeking admission" here, so § 1225(b)(2) does not apply to him.

Taken to its logical conclusion, the Federal Respondents' reading of § 1225(b)(2)(A) would mean that it applies to *all* noncitizens present in the United States who have not been admitted. That cannot be. First, the Federal Respondents' arguments run headlong into *Jennings* and its language characterizing § 1226(a) as applying to "aliens already in the country," like Chachipanta Cando was upon his arrest. Nor is the Court persuaded that both § 1225(b)(2) and § 1226(a) "overlap" such that they could apply to one noncitizen at the same time. As then-Attorney General Bill Barr explained, "section [1225] (under which detention is mandatory) and section [1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens." *Matter of M-S-,* 27 I. & N. Dec. 509, 516 (2019); *see also Hernandez Marcelo v. Trump,* 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) ("The correct distinction when assessing detention pending removal lies between those located in the United States and those located outside the United States.").

Further, the Federal Respondents' interpretation would render "recent congressional enactments superfluous." *Giron Reyes v. Lyons*, 2025 WL 2712427, at *5 (N.D. Iowa Sept. 23, 2025). Enacted just last year, the Laken Riley Act amended § 1226 by adding § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Chachipanta Cando), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)–(ii). Because § 1182(a)(6)(A)(i) specifically refers to noncitizens "present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of those noncitizens[5] if they have also committed certain enumerated crimes, the recently created statutory exception would be redundant if § 1225(b)(2) also authorized their detention. "That is, because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly

---

[5] There is no suggestion here that Chachipanta Cando is subject to mandatory detention under § 1226(c)(1)(E).

7

and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). Statutes should be read to avoid making any provision "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Adopting the Federal Respondents' interpretation would do just that. Therefore, their interpretation is untenable.

Finally, based on the language of the statute itself, the most natural interpretation of § 1225 is that it applies to noncitizens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. Start with the title: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added); *Chernin v. United States*, 149 F.3d 805, 816 (8th Cir. 1998) ("[I]t is instructive to turn to the title of the statute to aid in resolving textual ambiguity."). Elsewhere too, Section 1225 "repeatedly refers to aliens entering the country." *Lopez v. Sheehan*, 2025 WL 3046183, at *4 (N.D. Iowa Oct. 30, 2025); *see* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (noncitizens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further addresses "crewm[e]n" and "stowaway[s]" in Section 1225(b)(2)(B). In short, Section 1225's text suggests it was "set up with arriving aliens in mind," not those who have already entered the country. *Lopez,* 2025 WL 3046183, at *4.

The Court recognizes that the Board of Immigration Appeals reached the opposite conclusion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). But the Court is not bound by that decision. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024); *Quito-Guachichulca v. Garland*, 122 F.4th 732, 753 (8th Cir. 2024) (noting that "[d]eference to the Board [of Immigration Appeals] . . . is now a relic of the past."). Nor does the Court find it particularly persuasive, especially given that it represents a departure from longstanding agency practice. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) ("Aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Indeed, "[f]or

almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception." *Pizzaro Reyes,* 2025 WL 2609425, at \*8.

The Court, in accordance with the majority of district courts[6] to consider this issue, therefore concludes that § 1226(a), not § 1225(b), applies to a noncitizen like Chachipanta Cando who is detained within the United States. *Barrajas,* 2025 WL 2717650, at \*4 (collecting cases). Thus, Chachipanta Cando is entitled to a bond hearing, and his detention without one is unlawful.[7]

Just one issue[8] remains—the proper remedy. Chachipanta Cando initially sought either his immediate release—on the grounds that the Federal Respondents had not produced an arrest warrant—or an order directing "Respondents to permit Petitioner to post the $6,000 bond referenced in the Immigration Court's alternative findings and release him upon the posting of such bond." (Filing No. 1 at 36). The Federal Respondents have now produced an arrest warrant. (Filing No. 6-2). For his part, Chachipanta Cando seems to concede that means he is not entitled to immediate release. In his reply, he limits his requested relief to release upon payment of the $6,000 bond. (Filing No. 7 at 1, 27).

---

[6] The Court acknowledges that the two appellate courts to weigh in on the issue have reached different conclusions. The Seventh Circuit preliminarily concluded that the U.S. Department of Homeland Security was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders," *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025), while the Fifth Circuit "conclude[d] that the government's position is correct" based on its interpretation of § 1225(b)(2)(A), *Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026), at \*1. The Court is, of course, not bound by either decision, but it does not find *Buenrostro-Mendez* persuasive for the reasons outlined above as well as those in Judge Douglas' dissent.

[7] The parties directed most of their attention to the statutory issue in their briefs. But Chachipanta Cando also alleged that his detention without a bond hearing violates his Fifth Amendment right to due process. (Filing No. 1 at 33). The Court need not reach the constitutional issues here because it will grant Chachipanta Cando the relief he seeks, in part, based on its determination that § 1226(a) applies.

[8] As to Chachipanta Cando's request for attorney's fees and costs under the Equal Access to Justice Act (Filing No. 1 at 36), he may move separately within thirty days of final judgment in this action to recover them. *See* 28 U.S.C. § 2412(d); 5 U.S.C. § 504.

The Court agrees Chachipanta Cando is entitled to relief. But the immigration judge, and not this Court, should handle granting Chachipanta Cando a bond, accepting payment, and releasing him on that bond in the first instance. To remedy the unlawful aspect of Chachipanta Cando's detention, the Court will therefore order that the Federal Respondents provide him with a bond hearing pursuant to § 1226(a) and 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) within three days. The Court's expectation, however, is that the immigration judge will grant Chachipanta Cando release upon payment of a $6,000 bond as indicated in his January 28, 2026 Order. (Filing No. 1-7). Accordingly,

**IT IS ORDERED:**

1. Petitioner Segundo Marcelo Chachipanta Cando's Verified Petition for a Writ of Habeas Corpus. ([Filing No. 1](#)) is granted in part and denied in part, as set forth above.
2. The Federal Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations within three days of this order.
3. If the Federal Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required by this Order, Petitioner must be immediately released from detention.
4. Within seven days of the date of this Order, the parties shall provide the Court with a status update concerning the Petitioner's release.
5. A separate judgment will be entered.

Dated this 9th day of February, 2026.

BY THE COURT:

_Susan M Bazis_
Susan M. Bazis
United States District Judge